STATE OF NEBRASKA, APPELLEE, V. JOHN SWANSON, APPELLANT.

140 N. W. 2d 618

Filed February 11, 1966. No. 36040.

Murphy, Pederson & Piccolo, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

The defendant was found guilty by a jury and sentenced to the Nebraska Penal and Correctional Complex on each of two counts of an information filed in the district court for Chase County. He appeals to this court from an order overruling his motion for a new trial.

Count one was for obtaining money and credit from the National Bank of Commerce Trust and Savings Association of Lincoln, Nebraska, hereafter designated as the Lincoln Bank, on May 21, 1964, in Chase County, by falsely pretending to be the owner in the aggregate of 629 head of cattle therein listed and described in four

groups, each situated in a specifically described locality. Relying on said false pretenses the Lincoln Bank accepted from defendant a chattel mortgage on said cattle to that bank. By reason of said false pretenses and representations of the defendant, the Farmers and Merchants Bank of Imperial, Nebraska, hereafter referred to as the Imperial Bank, as agent for the Lincoln Bank, gave defendant money and credit in the sum of $3,110.53; said pretenses and representations were false; defendant did not own any of said cattle except 80 head thereof in one such group; and said representations were made with the intent to cheat and defraud the Lincoln Bank.

Count two charged that on May 21, 1964, in Chase County, defendant knowingly and unlawfully made a false statement in writing to the Lincoln Bank respecting his financial condition for the purpose of procuring a loan of $3,110.53 with the intent that said false statement should be relied upon by the Lincoln Bank and that that bank believed the false statement to be true and acting thereon parted with money and credit in the sum of $3,110.53.

Previous to the acts in question the defendant had procured cattle loans from the Imperial Bank and the Lincoln Bank, which was the correspondent of the former. In the fall of 1963 defendant's loan from the Imperial Bank had reached its legal limit of $35,000. Any additional loans were then being carried by the Lincoln Bank, either by notes payable directly to it or by notes payable to the Imperial Bank which it endorsed to the Lincoln Bank. The loans were secured by chattel mortgages on cattle. On May 21, 1964, the principal sum of his loan to the Imperial Bank was $35,000, and of loans to the Lincoln Bank, $81,786.67. None of them were then due. A short time previous to May 21, 1964, Wilbur Baack, vice president of the Lincoln Bank, telephoned Edwin Burke, vice president of the Imperial Bank, and arranged for a meeting with the defendant on that date.

Cattle prices were down and Baack thought Swanson's loan should be reviewed and his paper extended.

Defendant was notified and on the morning of May 21, 1964, met Burke and Baack at the Imperial Bank. Defendant drove Burke and Baack to the several locations where he showed them cattle. Included with these cattle were 82 head of heifers at the Vilas Smith feed lot in pen No. 6. He also pointed out as they rode to various locations 120 head of steers in Chase County, 300 white-faced steers on Malancie grass in Lincoln County, and 127 white-faced steers on Guthrie grassland in Garden County. It is unnecessary to allude to the statements of the defendant or his actions during the trip. It was stipulated in open court that he represented to both bankers that he owned these cattle and that the representations were untrue and, with the exception of 80 head of white-faced steers located in Chase County, he did not own any of them. The cattle mentioned are those described in the first count. It was not until evening that they returned to Imperial.

At 8:30 or 9 that evening the two bankers and the defendant met again at the Imperial Bank where Baack prepared a written list of the cattle on an inspection sheet, totaling 1,275 cattle, which includes those exhibited that day, from the notes he had taken on the trip. It is dated May 21, 1964, and states that, "I have inspected this day chattel of John Swanson * * * for $122,000." It is signed by both bankers and at its end is the statement: "I certify that the above chattel as listed is the property of my chattel of above date and amount. (Signed) John Swanson." Also, the property statement was prepared which shows it was given to the Lincoln Bank, "For the purpose of obtaining loans and discounting paper with you, and otherwise procuring credit." It contains a list of 1,640 cattle, grouped by age, sex, and weight which includes cattle corresponding with like kinds listed on the inspection sheet. It also sets forth certain real estate, including farmlands valued at $129,-

950, one parcel of which was encumbered for $16,000. It states it is a true and correct statement of the financial condition of the defendant.

With respect to the property statement referred to in count two, it was also stipulated that defendant was not the owner of any cattle listed thereon which bore a similar description to the ones previously mentioned and was not the owner of the northeast quarter of Section 19, Township 13, Range 2 East, in Walton Township, Sumner County, Kansas, described in the financial statement. This land was unencumbered and valued at $72,000 in the statement.

Before drawing the papers, defendant was asked if he desired further money and he replied he could use some. He stated he needed between $2,000 and $3,000, and the loan was rounded out in the sum of $122,000. A chattel mortgage was drawn, purporting to mortgage 1,272 cattle, including those heretofore mentioned as inspected that day. The chattel mortgage was made to the Imperial Bank and the Lincoln Bank and secured two notes, one for $35,000 and the other for $87,000. Such a $35,000 note to the Imperial Bank and an $87,000 note to the Lincoln Bank were prepared. The notes, chattel mortgage, and property statement were all prepared in defendant's presence and all signed by him that night.

After the papers were signed vice president Burke made a deposit slip showing defendant had deposited to his credit at the Imperial Bank the sum of $122,000. The defendant signed and delivered to the bankers two checks on this account in the same bank. One was for $35,895 to the Imperial Bank which was for the principal and $895 interest on its former loan, and the other for $82,-994.47 to the Lincoln Bank for the principal and $1,209.80 interest on the loans to it. At this conference at the bank, vice president Baack told vice president Burke in Swanson's presence to credit the additional amount to defendant's account and "to make the various entries

to offset that for our banks." The Imperial Bank posts its books the day following a transaction. On May 22, 1964, the individual account of defendant in the Imperial Bank was credited with $122,000 and charged with the two checks given by defendant, one for $35,895 and one for $82,994.47. This left the credit difference of $3,110.53 to augument his account. The new note of $35,000 was entered on the liability ledger. The two banks adjusted their accounts between themselves by ledgers kept at each bank similarly to an account with an individual. Those adjustments were made on May 22, 1964, at the Imperial Bank and on May 25, 1964, at the Lincoln Bank as Baack did not return to Lincoln immediately.

At some undisclosed time on May 22, 1964, two officers of an Ogallala bank, the mortgagee, with one of the owners of the 82 heifers in Vilas Smith's pen No. 6, went to the Imperial Bank and informed Burke that these cattle were not the defendants but were owned by other parties. They all drove to defendant's farm and Burke confronted defendant Swanson with what he had learned as to the ownership of the 82 heifers. Defendant immediately admitted the ownership by McCullough and Jasnock and that they were not owned by him.

On the posting of the transaction to the defendant's account in the Imperial Bank, the new credit of $3,110.53 augmented his balance to the total sum of $9,689.99 on May 22, 1964. Under date of May 23, 1964, after cashing three small checks and one large one for $2,782.44 for a feed bill, there was still $6,889.91 in his account. On May 25, 1964, a deposit is shown of $1,200, and a check marked for cattle in the sum of $8,000 and another of $112.50 marked for labor were paid, leaving an overdraft of $22.59.

Baack testified that the representations had the effect in the rewriting of the loan of showing they had a sufficient margin in the cattle, "plus looking at the financial statement," to warrant additional credit. He stated he

would not have rewritten the loan if he had known the defendant did not own the 300 steers on the Malancie grass, nor would he have done so if he had known that the 82 white-faced heifers at the Vilas Smith feed lot in pen No. 6 were not so owned, nor had he known that the 120 steers were in fact only 80 head. Neither would the loan have been negotiated if he had known defendant did not own the cattle listed on the financial statement or the land listed thereon, described herein.

The defendant assigns many errors to the trial court. Those which we deem necessary to consider will be stated as discussed.

Defendant contends that the trial court erred in overruling the defendant's demurrer to each count of the information for the reason each of them fails to state facts sufficient to constitute an offense under the statute. These so-called demurrers were made orally at the conclusion of the State's evidence. The theory of the defendant appears to be that each count fails to inform the defendant with reasonable certainty of the crime of which he was charged. Each count charges that the defendant obtained "money and credit (from the Lincoln Bank) in the sum of $3,110.53." It is urged by defendant that it is impossible to tell therefrom how much money was obtained or what kind and how much credit.

Both sections 28-1207 and 28-1216, R. R. S. 1943, plainly provide that so far as receipt of the avails of the false pretense or representation by the wrongdoer is a necessary element of the particular crimes mentioned, obtaining either money or credit is sufficient. The evidence shows that what the defendant obtained was a credit in the Imperial Bank, advanced by the Lincoln Bank through the Imperial Bank. The credit was later checked out by the defendant. The giving of the mortgage and its date is set out in the first count. The date of the property statement is shown in the second. The amount obtained therefor in the sum of $3,110.53 was set forth in both. As far as the record discloses there

was but one transaction on May 21, 1964, at which time the mortgage and the false statement were given to effectuate the loan and procure the advancement.

In the case of State v. Jarrett, 177 Neb. 459, 129 N. W. 2d 259, there was a prosecution under section 28-1207, R. R. S. 1943, in which the defendants were charged with obtaining money by false pretenses in excess of $35 with intent to cheat and defraud. Proof showed that instead of receiving money, defendants received checks which they later cashed. This court held: "In the case of a charge of obtaining money by false pretenses, under section 28-1207, R. R. S. 1943, proof that the defendants received a check, which was paid, is sufficient to sustain the allegation that the defendants obtained 'money.'

"In the case of a charge of obtaining money by false pretenses, if the defendants received a check or draft which was paid, there is no variance in the charge and the proof."

In Mason v. State, 23 Okl. Cr. 111, 212 P. 1028, in a prosecution for obtaining property by false representation, the preliminary complaint charged the defendant with obtaining a certain amount of good and lawful money of the United States, and the information filed thereafter which charged the defendant with obtaining the same amount of good and lawful money by means of falsely procuring certain warrants issued by the city of Ardmore, Oklahoma, totaling said amount. The Criminal Court of Appeals of Oklahoma, in the cited case, held that: "An information is sufficient where it charges substantially the same offense charged in the preliminary complaint. * * * Words used in an indictment or information must be construed in their usual acceptation in common language, except words and phrases having a different fixed legal significance. * * * In the sense here used, 'money' means gold and silver coin, treasury notes, bank notes, and other forms of currency in common use, and every deposit which any person owning the same is entitled to withdraw in money on demand." We think

the rule of the court in the cited case is sound and it seems to be that which was the basis of the decision of this court in State v. Jarrett, *supra*. In the information before us, the expressions "money and credit" charge but a single thing which the defendant obtained. The terms are synonymous and interchangeable. In the present case it is scarcely conceivable that the defendant would not have known from the information that the money and credit he had obtained was the difference between the loan procured from the Lincoln Bank and credited to his account in the Imperial Bank, less the checks he himself drew, and that the amount was approximately the $3,110.53 so obtained.

In Smith v. State, 169 Neb. 199, 99 N. W. 2d 8, this court said: "The general rule is that a defect in the manner of charging an offense is waived if, upon being arraigned, the defendant pleads to the general issue, provided the information contains no jurisdictional defect and is sufficient to charge an offense under the law." In that case it was held that certain counts of the information were fatally defective in failing to show the venue, but as to the count which set forth the venue, there were no jurisdictional defects and they were sufficient to charge the offense under the law. We hold the defects complained of in the two counts in the information before us were not jurisdictional defects. As they were not raised by demurrer until after the defendant had pleaded and the State had rested, the defendant's assignment of error cannot be sustained as to either count.

Defendant assigns as error the trial court's failure to sustain his motion made at the close of the State's evidence to dismiss each count of the information and that the verdict of the jury on each count is contrary to the law and the evidence. The contentions with respect to these errors are so interrelated that they will be considered together.

Defendant contends there was no proof that the false pretenses were made for the purpose of obtaining credit.

He cites the case of Anthony v. State, 109 Neb. 608, 192 N. W. 206, as authority for the proposition that in a prosecution for obtaining credit by false pretenses a causal connection between the false pretenses and the obtaining of the credit is an element of the offense and must be proved beyond a reasonable doubt. In the cited case the indictment set forth the false representations and that the person to whom they were made relying thereon bought certain stock which was misrepresented. Because it failed to explicitly state that the promissory note obtained by the defendant was given in reliance on such representations it was held not to state facts sufficient to show the commission of the crime. In the case before us the defendant applies the rule of the cited case as it relates to the sufficiency of the proof. Defendant contends that he made no pretense, representation, or statement for the purpose of obtaining money or credit. He says he had already obtained credit in a large amount and had not asked for additional funds. Defendant claims any representations and statements related by him were made with respect to the property which secured his existing indebtedness and not in connection with any new credit. He says it was an afterthought of the bankers at the time of extending the indebtedness which was not then due. It was the bankers who asked defendant if he needed some more operating money. He then said he could use some and they simply voluntarily and without solicitation rounded off the rewrite of the notes and mortgage to an even $122,000 which resulted in an additional credit of $3,110.53. Therefore he claims there is no proof of any intent on his part to cheat and defraud either bank, and the conviction cannot be sustained by the record. We have no quarrel with the rule of law stated by the defendant. There is, however, other evidence here besides the statement of the defendant that he needed more money and could use the approximate amount of the additional credit. The inspection record and property statement refer to a loan of $122,000 which

included the new credit. All day was spent in exhibiting his cattle to the bankers. In Haines v. State, 135 Neb. 433, 281 N. W. 860, this court said: " 'This court, in a criminal action, will not interfere with a verdict of guilty, based upon conflicting evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt.' Williams v. State, 115 Neb. 277, 212 N. W. 606.

"Where there is competent evidence to support a finding of intent to defraud, the verdict of the jury will not be disturbed because there is testimony tending to indicate that there was no such fraudulent intent.

"Intent to defraud may be proved by the circumstances surrounding the transaction." We think there was evidence from which the jury could infer the false pretenses and representations were made to secure the additional credits beyond a reasonable doubt.

Defendant argues that no additional money or credit was actually obtained by him until he checked it out of his account. That was some time after the Imperial Bank, as agent for the Lincoln Bank, had knowledge of his falsification. He maintains the evidence of agency was proved, being elicited on cross-examination by the defendant's counsel. This agency, he argues, was of a continuing nature and not for a specific purpose of assisting in making the loan and transferring the credit. The Imperial Bank as such agent on learning of defendant's deceit on May 22, 1964, should have frozen the defendant's account in the Imperial Bank and enabled the Lincoln Bank to reclaim the credit it had advanced and recoup its loss. The evidence that the balance in the defendant's account in the Imperial Bank exceeded the new credit for several days is pointed out. Authorities are cited which defendant contends establishes that where a depositor has perpetrated a fraud in connection with an unmatured indebtedness, a bank is entitled to

rescind any agreement made as to the time of payment and set off a deposit against the unmatured debt.

We think it unnecessary to discuss the authorities cited or to determine whether the agency disclosed by the evidence was a continuing one or restricted for a specific purpose. Neither are we required to determine whether the Imperial Bank as an agent of the Lincoln Bank could freeze the account in the Imperial Bank for the benefit of its correspondent. In 22 Am. Jur., False Pretenses, § 32, p. 463, it is said: "The gravamen of the offense, however, is in making the false pretense, and thereby obtaining a person's property or signature; it does not depend upon ultimate loss to the victim or whether in fact he sustains any pecuniary loss. The offense is complete when the money or property has been obtained by such means and cannot be purged by subsequent restoration or repayment. Under this rule actual repayment of a loan obtained by false pretenses does not exonerate the deceiver from criminal prosecution." This rule has been applied by this court. See, West v. State, 63 Neb. 257, 88 N. W. 503; Pettijohn v. State, 148 Neb. 336, 27 N. W. 2d 380; McDonald v. State, 124 Neb. 332, 246 N. W. 716. If the money and credit were procured through the means of the false pretenses and representations, it is immaterial whether the victim thereof might by diligence have recouped its loss.

The defendant assigns error in the giving of instructions Nos. 3, 6, 7, 8, 9, 10, 14, 16, 17, and 18, numbered in severalty. The instructions are quite long and will not be set forth herein. We will only discuss those matters which reflect the defendant's contentions. His principal objection is that the instructions previously referred to by number are in conflict and for that reason confusing with the following: "INSTRUCTION NO. 13 You are further instructed that before the defendant can be found guilty of either count in this case, the State must have established, beyond a reasonable doubt, that the National Bank of Commerce Trust and Savings Association actu-

ally parted with money or credit on the reliance of the false representations to *its damage*.

"*If you find that immediately after the alleged extension of additional credit, if you find beyond a reasonable doubt that it was extended, the Farmers and Merchants Bank had money on deposit to the credit of John Swanson, and said Farmers and Merchants Bank was agent of the National Bank of Commerce Trust and Savings Association, then the National Bank of Commerce Trust and Savings Association had the opportunity to protect itself against any alleged false representations made by the defendant and cannot be said to have sustained any damage.*" (Italics supplied.)

It is apparent from his brief that this italicized portion of instruction No. 13 states the law as contended by the defendant. Our previous discussion, however, quite clearly determines that the crime, if committed, was complete on the deposit to the defendant's bank account of the new credit and that the ability of the Lincoln Bank through the Imperial Bank or otherwise to save itself from loss thereafter was immaterial. It owed no such duty to the wrongdoer. The italicized portion of instruction No. 13 did not correctly state the law and should not have been given. It was more favorable to the defendant than he was entitled. This court has held that a party cannot complain of an instruction that is more favorable to him than he deserves although it is technically erroneous to the issues. See, Darr v. Donovan, 73 Neb. 424, 102 N. W. 1012; In re Estate of Keup, 145 Neb. 729, 18 N. W. 2d 63. Here the defendant clings to the erroneous instruction No. 13 but complains that the others are in conflict with it. An inconsistency of instructions is not fatal unless one of the inconsistent instructions errs wrongfully against the accused. 23A C. J. S., Criminal Law, § 1307, p. 747; Finn v. United States, 219 F. 2d 894, certiorari denied, 349 U. S. 906, 75 S. Ct. 583, 99 L. Ed. 1242; Hopper v. Commonwealth (Ky.), 371 S. W. 2d 646.

The defendant complains because in some of the instructions hitherto set out by number, the jury was instructed it must find the false statements and representations were made for the purpose of obtaining the sum of $3,110.53 *or some other amount.* Of course the exact amount which he intended to obtain might not necessarily be that which he finally received and the instruction is in that respect a correct statement of the law. In other instances, however, the jury was told that it was necessary it find the Lincoln Bank parted with credit in the sum of $3,110.53 *or some other amount.* In those instances the addition of the italicized words was not in accordance with the evidence which clearly shows $3,110.53 was the exact amount obtained. We think the other instructions quite clearly point out the exact amount of the credit claimed to have been obtained. Although the additional words were not proper, on reviewing all of the instructions and the evidence as a whole we think the error was not prejudicial to the defendant.

Defendant complains that the verdict of the jury is fatally defective because it fixes the value of the credit obtained by its findings as to the first count in the sum of $118,889.47, where the evidence clearly shows it was $3,110.53. In the case of Wax v. State, 43 Neb. 18, 61 N. W. 117, this court held: "In a prosecution for obtaining money under false pretenses it is the duty of the jury, in case of a conviction, to find the value of the money feloniously obtained; but a verdict of guilty will not be set aside because it fixes the value of the money at a few dollars more than is established by the evidence, where the uncontradicted proofs show that the sum procured from the complaining witness exceeded in value $35." The discrepancy in the amount in the cited case was small and here it is great but the same principle is involved. Here the evidence clearly shows that the credit obtained exceeded the amount required to make the offense a felony. Previous to the case before us, section 29-2026, R. R. S. 1943, had required

the jury to fix the amount obtained by the defendant in such cases. It was repealed by Laws 1963, chapter 163, page 576. Although it was reenacted by Laws 1965, chapter 146, page 488, it did not exist either at the time of trial or of the commission of the offense. We think the rule in Wax v. State, *supra*, should be followed and the verdict will not be set aside because of this error.

We are unable to sustain the errors assigned by the defendant. It follows the judgment and sentence of the trial court should be and is affirmed.

AFFIRMED.