ALLEN HARTLEY and BETTY HARTLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
HARTLEY v. COMMISSIONER
Docket No. 1305-76.
United States Tax Court
T.C. Memo 1977-343; 1977 Tax Ct. Memo LEXIS 125; 36 T.C.M. (CCH) 1381; September 19, 1977, Filed *125 Petitioners made cash advances to a contractor to enable him to purchase building materials for the construction of their home. The contractor purchased part of the materials on credit creating a mechanics lien on petitioners' property which they were required to discharge. The contractor defaulted on the construction contract and absconded with part of the cash advances. Held, petitioners suffered a deductible theft loss under sec. 165(c)(3), I.R.C. 1954. Gary R. Pearson, for the petitioners. Albert B. Kerkhove, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $2,814.36 in petitioners' 1973 income tax. After concessions, the sole issue is whether petitioners suffered a theft loss under section 165(c)(3). [1]
FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. Allen and Betty Hartley, husband and wife, lived in Roca, Nebraska, when they timely filed their 1973 income tax return and when they filed their petition in this case. On October 13, 1972, petitioners contracted with James Young for the construction of a $32,000 home. *127 Pursuant to Young's requests, petitioners advanced Young a total of $25,700 as follows: On November 3, 1972, Young requested $1,700 for excavation; on November 21, 1972, Young requested $2,500 to purchase lumber, materials and other supplies; on December 1, 1972, Young requested $5,500 to pay for labor and to purchase additional materials and supplies; on January 9, 1973, Young requested $7,000 for out-of-town purchases of redwood lumber, doors, windows, sheathing; on January 19, 1973, Young requested another $7,000 advance to purchase the materials necessary to complete the house; and on March 21, 1973, Young requested a final $2,000 to pay labor and materials and to purchase four sliding glass doors. Allen Hartley (hereinafter Hartley) testified that following the first three advances through December 1, 1972, new materials appeared at the construction site. The materials allegedly purchased with the two $7,000 advances on January 9 and 19, 1973, however, never appeared at the construction site. Harlely confronted Young with the failure of these materials to appear at the site and with construction delays in general. Young explained that he was behind schedule on the construction *128 because of other construction contracts and because the severe Nebraska winter made it impossible to work or deliver materials to the Hartley site. Shortly after the four sliding glass doors appeared at the construction site, two disappeared. On April 5, 1973, two doors of a similar make, type, and model appeared at a nearby construction site where Young was working on another home construction project. Hartley telephoned Young's residence on April 30, 1973, to discuss further unexplained construction delays with Young. Mrs. Young answered and stated: "He feels that he is in too deep in this construction, he has left town and is not planning to return." Hartley testified this confirmed his suspicion that Young was not going to complete the construction. Hartley subsequently learned that of the $25,700 he had advanced Young for materials and labor, only $7,036 was actually used to purchase materials. Young had charged $10,964 for materials causing a mechanics lien to be filed against the Hartley premises. Petitioners were required to pay Young's $10,964 charge to free their property of the lien. These circumstances prompted petitioners to pursue criminal and civil action *129 against Young. Hartley and his attorney approached the county attorney seeking an arrest warrant for Young. The county attorney refused to issue the warrant because he felt the circumstantial evidence was not sufficient to constitute a crime under any Nebraska criminal statute and he felt he would have difficulty in extraditing Young from another state where he was then located. On May 9, 1973, petitioners brought a civil suit against Young which resulted in a default judgment for $17,964 plus interest. Young defaulted on at least one other home construction project. Daryl Chapelle subcontracted part of the construction work on his home to Young. He testified that in April and May of 1973, he advanced Young $1,700 for the purchase of building materials which, for the most part, never appeared at the construction site. Chapelle did obtain two sliding glass doors valued at $300 each which Young said he obtained at a bargain price from another customer who did not like them. A few days after receiving the doors, Chapelle was visited by the local sheriff who indicated two doors of a similar model, type, and serial number had been stolen from petitioners. Chapelle lost patience *130 with Young's excuses for construction delays when no work had been performed on his home through mid-April. Young blamed the delays on the performance failure of concrete wall subcontractors. After several phone calls to Young's wife who indicated that Young was out of town, but would return shortly, Chapelle concluded in early May 1973, that Young was defaulting on their contract. On March 24, 1974, Young filed a voluntary petition in bankruptcy. Petitioners filed an objection to the discharge of their $17,964 judgment on the ground that Young had obtained their money through false, fraudulent, and misleading statements. The court held that petitioners' debt was dischargeable because it was not persuaded that Young entertained the requisite guilty intent under 11 U.S.C., sec. 35(a)(2)(1970), which excepts from discharge liabilities for obtaining money by false pretenses or representations. In 1973, petitioners deducted $18,414 as a theft loss under section 165(c)(3). They determined the amount of their loss by subtracting $7,736, the appraisal value of their partially completed house, from $25,700, the amount of the cash advances, to arrive at $17,964. *131 To this figure they added $550 for legal fees attributable to the loss and subtracted the $100 non-deductible casualty loss floor. Respondent disallowed the deduction under section 165(c)(3) on the ground that petitioners had not established that they suffered a theft loss under Nebraska law. Instead, respondent allowed petitioners to deduct a corrected amount of $18,664 as a nonbusiness bad debt under section 166(d) giving rise to a short-term capital loss. [2]
OPINION In 1973, petitioners suffered a loss when Young failed to complete the construction of their home and when he purchased building materials on credit rather than using cash advances *132 obtained from petitioners for that purpose. It is petitioners' contention that Young's statements which led them to advance money to purchase materials, constitute a violation of Nebraska criminal law. As a result, petitioners contend they suffered a theft loss within the meaning of section 165(c)(3). Respondent contends that petitioners have failed to establish that a theft occurred under Nebraska law and therefore their loss is deductible as a nonbusiness bad debt under section 166(d). Section 165(c)(3) allows an individual taxpayer to deduct nonbusiness losses in excess of $100 if, among other things, the losses arise from theft. As used in the statute, theft is intended to incorporate any criminal taking of another's property, including the crime of false pretenses. Sec. 1.165-8(d), Income Tax Regs.; Edwards v. Bromberg,232 F. 2d 107, 110 (5th Cir. 1956); Gerstell v. Commissioner,46 T.C. 161 (1966). The factual existence of the theft must be established by reference to the law of the jurisdiction where the loss occurred. Weingarten v. Commissioner,38 T.C. 75, 78 (1962); Monteleone v. Commissioner,34 T.C. 688, 692 (1960). *133 Although a criminal conviction in a state court may conclusively establish the existence of a theft, the deduction does not depend upon whether the thief is convicted, prosecuted, or even whether the taxpayer chooses to move against him. Weingarten v. Commissioner,supra at 78; Vietzke v. Commissioner,37 T.C. 504, 510 (1961). Moreover, the taxpayer must prove a theft occurred under the relevant state statute only by a preponderance of the evidence. Allen v. Commissioner,16 T.C. 163, 166 (1951); Jones v. Commissioner,24 T.C. 525, 527 (1955); Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioners claim that Young's statements, which induced them to advance him funds for the cash purchase of building materials, constitute the crime of false pretenses under Neb. Rev. Stat., sec. 28-1207 (1975), which provides in pertinent part as follows: Obtaining money, goods, chattels, real property by false pretenses; penalty. Whoever * * * by a promissory representation as to some future action to be taken by the person making the representation where made with the present intent *134 that such future action would not be performed or carried out, shall obtain from any other person * * * any money * * * with intent to cheat or defraud such person * * * if the value of the property * * * fraudulently obtained or conveyed as aforesaid, shall be thirty-five dollars, or upwards, shall be imprisoned in the Nebraska Penal and Correctional Complex not more than five years nor less than one year; * * * Petitioners point out that Young's representations that he needed cash advances to purchase materials for the construction of their house were false because he charged $10,964 for materials which petitioners were subsequently required to pay. Petitioners further contend that when Young requested these cash advances he had no intent to purchase the materials but rather intended to defraud petitioners of their money. Respondent argues that the record reflects no evidence that Young made such representations with the intent not to purchase the materials. We cannot agree with respondent. Intent to defraud may be proven by the circumstances surrounding the transaction. Skolnik, v. Commissioner,55 T.C. 1055, 1062 (1971); State v. Bohannon,187 Neb. 594, 193 N.W. 2d 153, 155 (1971); *135 State v. Swanson,179 Neb. 693, 140 N.W. 2d 618, 624 (1966). In addition, evidence of similar transactions with other persons at different times and places is relevant and admissible when it is limited to the question of criminal intent. State v. Dodd,175 Neb. 533, 122 N.W. 2d 518, 519 (1963); State v. Easter,174 Neb. 412, 118 N.W. 2d 515, 521 (1962). Evidence of similar acts is admissible because the recurrence of a similar unlawful act tends to establish the presence of criminal intent and negative accident or inadvertence. Prior as well as subsequent similar acts are therefore admissible since it is the repetition of the acts which is significant. 2 Wigmore, Evidence secs. 301 and 321, at 196 and 226 (3d ed. 1940); State v. Casados,188 Neb. 91, 195 N.W. 2d 210, 213 (1972). After a careful consideration of the entire record, we conclude that petitioners have carried their burden of proof in establishing the crime of false pretenses under Nebraka law and, more particularly, the element of intent. Young's own conduct is evidence of his intent. He repeatedly sought cash advances from petitioners which he allegedly *136 needed for purchases of building materials. Yet Young charged $10,964 for materials and used the cash advances, in part, for his own personal needs. The testimony of Daryl Chapelle indicates that he also advanced Young $1,700 but obtained only $600 in materials for his home. Moreover, the $600 in materials which Chapelle did receive were comprised solely of two sliding glass doors. The record reflects that these doors were of the same model, type, and serial number as two doors which disappeared from petitioners' construction site. The entire record leads us to conclude that Young resold petitioners' doors to Chapelle. Under these circumstances we believe that petitioners have shown by a preponderance of the evidence that Young did not intend to obtain the materials for their home when he requested the cash advances for that purpose. If this was a simple contract default, as respondent would have us believe, honesty would have required Young to face petitioners and return to them at least a portion of their $10,964. Rather, Young absconded with the $10,964 and used it for his own benefit as he similarly did with the money of Daryl Chapelle. In addition, he led petitioners and *137 Chapelle to make additional cash advances by, in part, indicating delays in material delivery and construction work were the result of other construction contracts, weather and subcontractor failures. We believe Young knew when he made these statements that he would not complete petitioners' construction and that materials would not be delivered. As stated in Miller v. Commissioner,19 T.C. 1046, 1048 (1953): "It would take nice reasoning to distinguish this from theft or embezzlement * * *." Respondent argues in his brief that the failure of the county attorney to find a violation of any Nebraska statute and the failure of the Bankruptcy Court to find Young entertained the requisite intent for false pretenses, both indicate that we should conclude no theft occurred under Nebraska law. We do not agree. The conclusions of the county attorney and the Bankruptcy Court as to whether Young's conduct amounted to the crime of false pretenses under Nebraska law are only factors which we must consider. The county attorney's failure to seek arrest and indictment is not conclusive in this case for two reasons. First, the county attorney was required to evaluate the *138 evidence under the criminal standard of beyond a reasonable doubt but we are required to apply only the lesser preponderance of evidence standard. Allen v. Commissioner,supra;Jones v. Commissioner, supra;Rule 142(a), Tax Court Rules of Practice and Procedure. Second, the county attorney was noticeably concerned with whether the evidence was sufficient to extradit Young from another state, a factor we need not consider. The Bankruptcy Court's failure to find the requisite intent for false pretenses is also not conclusive. We have no record of the evidence made available to that court upon which it based its conclusions. We conclude only that the record presented by petitioners to this Court, when evaluated under our preponderance of evidence standard, reflects that petitioners have established the crime of false pretense under the Nebraska statute. Accordingly, we conclude that petitioners have suffered a deductible theft loss under section 165(c)(3) in the corrected amount of $18,664. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. We are not convinced that petitioners computed the amount of their loss in compliance with secs. 1.165-8(c) and 1.165-7(b), Income Tax Regs. Respondent's notice of deficiency states, without explanation, that the correct amount of petitioners' loss is $18,664. Respondent has placed only the deductibility of the loss in issue and, under these circumstances, we will not go behind his concession to challeenge the amount of petitioners' loss at $18,664. See Spruance v. Commissioner,60 T.C. 141, 155↩ n. 6 (1973).